**130**   People ex rel. Studebaker Corporation *v.* Gilchrist.

Third Department, May, 1926.                    [Vol. 217

The People of the State of New York ex rel. The Studebaker Corporation of America, Relator, *v.* John F. Gilchrist and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 21, 1926.

Taxation — corporation franchise tax under Tax Law, art. 9- A — parent company, foreign corporation, not doing business here, owned all of stock of relator — foreign corporation engaged in selling automobiles and parts manufactured by parent — petitioner and most other subsidiaries were operated at loss due to selling arrangement between selling company and subsidiaries — parent company made large profits — plan to defeat Tax Law may be overcome under authority of Tax Law, § 211, subd. 9, par. 3, and § 214, subd. 7 — Tax Commission had power to determine income under fair agreement between foreign corporation and relator under Tax Law, § 211, subd. 9, par. 3 — burden rests on relator to show, on hearing before Tax Commission, that tax was incorrectly assessed — fixing income at same figure as parent corporation's net income would have been fixed if it had done New York business, was proper.

The State Tax Commission, by virtue of the authority vested in it by the 3d paragraph of subdivision 9 of section 211 and subdivision 7 of section 214 of the Tax Law, has the power to assess the fair net income of the relator, a subsidiary foreign corporation doing business in this State, although the relator's business showed no profit, since it appears that the relator was organized to sell automobiles and parts therefor manufactured by the parent corporation, a foreign corporation not doing business in this State; that while the parent corporation made a large net profit, most of its subsidiaries, including the relator, were, because of the selling arrangement between the parent corporation and the subsidiaries, running at a loss, which loss was apparently anticipated, contemplated and provided for by reason of the selling arrangement between the relator and the parent corporation, and since it further appears that the scheme entered into was for the purpose of evading taxation in this State.

Accordingly, the State Tax Commission possessed the power under paragraph 3 of subdivision 9 of section 211 of the Tax Law to determine what the net income of the relator would have been if a fair selling agreement had existed between the relator and its parent.

The contention of the relator that if the Appellate Division determines that the Commission fixed the tax upon the basis of an unfair agreement the relator's rights will be foreclosed without a hearing, is without merit, since the burden rested upon the relator to show at the hearing given to it by the Tax Commission that the tax was incorrectly assessed, and to establish not only error in the assessment by the Commission but also the exact amount of the error. It appears from the record that the relator was fully advised on the hearing of the attitude and theory of the Commission.

It cannot be said that the Commission proceeded upon a principle or theory fundamentally erroneous when it determined that the amount to be deemed the net income of the relator under a fair agreement with its parent corporation should be exactly the same figure at which the parent's net income from Ne /

York business would have been fixed had it itself transacted the New York business. That was a natural and fair method of ascertaining the relator's proper net income in the absence of data tending to prove error and its exact amount.

H. T. KELLOGG, J., dissents, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 18th day of August, 1923, directed to John F. Gilchrist and others, constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in revising and settling the accounts of the relator for franchise taxes under article 9-A of the Tax Law for the tax years beginning November 1, 1921, and November 1, 1922.

*Hawkins, Delafield & Longfellow* [*E. J. Dimock* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Wendell P. Brown* and *Claude T. Dawes, Deputies Attorney-General,* of counsel], for the respondents.

HINMAN, J. The relator, The Studebaker Corporation of America, is a corporation organized under the laws of the State of New Jersey, engaged in the business of selling motor vehicles in the State of New York and elsewhere. It did no manufacturing but purchased automobiles and parts from the Studebaker Corporation, its parent corporation, which owned all of its stock. This parent company was likewise organized under New Jersey laws but manufactured motor vehicles in Indiana and Michigan. It became the parent corporation of various other corporations through which it did its sales business in various parts of the United States and Canada. It did not dispose of its product in New York State except through the relator. By an agreement between the relator and its parent company, dated August 25, 1920, which replaced a prior agreement, the parent corporation agreed to sell its products to the relator at the retail list price less twenty-five per cent discount on cars and thirty-three and one-third per cent discount on parts. This agreement was the basis of purchase during the two years involved in this proceeding. During one year the relator sustained an operating loss of $449,133.14, while the parent corporation made a net profit of $11,434,954.41. During the next year the relator's loss was $2,168,176.63, while the parent corporation made a net profit of $13,684,852.73. Both of these losses were taken over by the parent corporation. The balance sheets of relator at the close of both of these years show no surplus out of which dividends could be declared and the relator admits that it has never declared a dividend since it was incorporated in 1911.

**132** People ex rel. Studebaker Corporation *v.* Gilchrist.

Third Department, May, 1926. [Vol. 217

The other selling subsidiaries of the parent corporation, with one exception, also operated at a loss during the two years covered by this proceeding. The one subsidiary which made a profit showed a profit of only $218,772.54 for one of the years and only a profit of $110,016.42 for the other year. It is very clear that the very large profits of the parent corporation of over $11,000,000 one year and over $13,000,000 the other year, were made at the expense of its subsidiaries and since the parent corporation took over the losses notwithstanding its contract with its subsidiary, the agreement was manifestly not the proper basis for estimating the fair profits which but for the agreement could have been obtained by the relator and was made for the purpose of avoiding income taxation in this State. The parent corporation filed with the Federal government reports for these years showing the combined income of itself and its subsidiaries and was taxed by the Federal government upon that basis. From the reports filed by the relator, which disclosed the entire net income of the parent corporation and its subsidiaries, as reported to the Federal government, and presumably from such other information as was in its possession, the State Tax Commission assessed taxes against the relator for the years in question upon the basis of the combined entire net income and combined segregated assets of the parent corporation and its subsidiaries. The taxes assessed for the two years respectively were $9,671.27 and $15,580.71. The relator claims that it had no income of its own and should have been taxed upon that basis; that it was subject only to a one-mill tax, which would have amounted to $12.14 for one year and $15.91 for the other. Due application was made by relator for a revision of the assessments. A hearing was afforded by the State Tax Commission. Upon the hearing the relator produced proof in the form of reports showing the exact figures of the combined income and combined segregated assets of the parent corporation and its domestic subsidiaries and upon those figures the assessments were revised and reduced to $9,452.53 and $12,468.55, respectively. It is now conceded by the State Tax Commission that the tax of 1921 should be still further reduced to $9,398.66 and the tax of 1922 to $11,936.24, to correct clerical errors.

The question presented is whether our statute under which these taxes were assessed is sufficiently broad to frustrate this plan obviously devised for the purpose of evading this income tax and to justify the taxes so assessed. We think that it is. The taxes have been assessed under article 9-A of the Tax Law (added by Laws of 1917, chap. 726), as amended to July 1, 1922. Both parties rely on the 1st and 3d paragraphs of subdivision 9 of section 211

People ex rel. Studebaker Corporation *v.* Gilchrist. **133**

App. Div. 130] Third Department, May, 1926.

of the Tax Law (added by Laws of 1920, chap. 640, as amd. by Laws of 1922, chap. 507, in effect April 6, 1922) and subdivision 7 of section 214 of the Tax Law (added by Laws of 1920, chap. 640, as amd. by Laws of 1921, chap. 705).

Said subdivision 9 of section 211 of the Tax Law as it read on July 1, 1922, provided as follows:

" 9. Any corporation owning or controlling, either directly or indirectly, substantially all of the capital stock of another corporation, or of other corporations, liable to report under this article, may be required to make a consolidated report showing the combined net income, such assets of the corporations as are required for the purposes of this article, and such other information as the Tax Commission may require, but excluding intercorporate stockholdings and intercorporate accounts.

" The Tax Commission may permit or require the filing of a combined report where substantially all the capital stock of two or more corporations liable to taxation under this article is owned by the same interests. The Tax Commission may impose the tax provided by this article as though the combined entire net income and segregated assets were those of one corporation, or may, in such other manner as it shall determine, equitably adjust the tax.

" Where any corporation liable to taxation under this article conducts the business whether under agreement or otherwise in such manner as either directly or indirectly to benefit the members or stockholders of the corporation, or any of them, or any person or persons, directly or indirectly interested in such business by selling its products or the goods or commodities in which it deals at less than a fair price which might be obtained therefor, or where such a corporation, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the corporation so owning the substantial portion of its capital stock in such a manner as to create a loss or improper net income, the Tax Commission may require such facts as it deems necessary for the proper computation provided by this article, and may for the purpose of the act determine the amount which shall be deemed to be the entire net income of the business of such corporation for the calendar or fiscal year, and in determining such entire net income the Tax Commission shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be or could have been obtained from dealing in such products, goods or commodities."

Said subdivision 7 of section 214 of the Tax Law, as it read on July 1, 1922, provided as follows:

"7. In case any report is made as provided by subdivision nine of section two hundred and eleven of the Tax Law, the Tax Commission may assess the tax against either of the corporations whose assets or net income are involved in the report and upon the basis of the combined entire net income and the combined segregated assets of the corporation and upon such other information as it may possess, or may adjust the tax in such other manner as it shall determine to be equitable."

Authority for the assessments upon the basis which was adopted by the Commission is found in both the 1st and 3d paragraphs of said subdivision 9 of section 211, unless the relator is correct in its contention that the 1st paragraph does not apply where the parent corporation is a foreign corporation not doing business in this State; that even if the 1st paragraph does apply where the parent is a non-resident foreign corporation, the Tax Commission did not follow the requirements of paragraph 1, in that it did not require a report from the parent corporation but obtained one from the relator; and further that the assessment, under paragraph 1, of a resident foreign subsidiary corporation on a basis of an assumed consolidation with a non-resident foreign parent, contravenes the State and Federal constitutional guaranties against deprivation of property without due process of law. (State Const. art. 1, § 6; U. S. Const. 14th Amendt. § 1.) It is unnecessary for us to examine these objections, if the taxes could be and were properly assessed under the 3d paragraph of said subdivision 9 of section 211.

In view of the decisions permitting the correction of net income where excessive salaries have been paid to corporate officers and excessive payments have been made under unfair contracts with parent corporations (*People ex rel. Jaeckel & Sons, Inc.*, v. *Gilchrist*, 209 App. Div. 120; *Matter of Lorimier, Greenbaum Co., Inc.*, v. *Gilchrist*, 212 id. 733, 735; *People ex rel. Butler, Inc.*, v. *Law*, 210 id. 804; affd., 240 N. Y. 644) the relator concedes that the Tax Commission had the power to determine the amount of net income which the relator would have received from its New York business under a fair agreement with its parent company and to base the tax upon the amount so ascertained, as permitted by the 3d paragraph of said subdivision 9 of section 211 of the Tax Law. The complaint of the relator is that if this court finds that the Commission determined the tax upon that basis of an unfair agreement, the relator's rights will have been foreclosed without a hearing. The reply of the Attorney-General seems to be sound and adequate to meet any such criticism. The Commission had the power to assess the tax upon the report originally

filed by the relator and any other information in its possession and the tax as so assessed was presumptively correct. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346, 348; *Matter of Lorimier, Greenbaum Co., Inc.,* v. *Gilchrist,* 212 App. Div. 733, 735; *People ex rel. Barcalo Manufacturing Co.* v. *Knapp,* 227 N. Y. 64, 71.) The burden rested upon the relator to show at the hearing afforded to it that the tax was incorrectly assessed. (*People ex rel. Kohlman & Co.* v. *Law, supra; Matter of Lorimier, Greenbaum Co., Inc.,* v. *Gilchrist, supra.*) The Commission does not seem to have concealed its theory, because counsel for the relator states in his brief: " The State Tax Commission examined the relator's witness at length adopting a line which clearly indicated that the possibility of attack upon the fairness of the contract between parent and subsidiary was in the Commission's mind." The relator had a right to assume that the Commission was not purporting to proceed under the 1st paragraph of subdivision 9 of section 211, because according to the relator's own contention the Commission made no demand upon the parent corporation to make a consolidated report. The theory of the Commission must have been evident to the relator. Upon the hearing the relator produced the consolidated reports of the parent and its subsidiaries. It offered no other evidence tending to show that the amounts of relator's net income for these two years as fixed by the Tax Commission were not the amounts which the relator would have received from its New York business under a fair agreement with the parent corporation. It was incumbent upon the relator, at the hearing upon its petition for revision, to prove not only error but its exact amount and if, upon the record, the Commission was unable, for lack of data essential to an intelligent revision, to resettle the account for taxes, it did not err in confirming the account and this court is without power to send the case back for a further hearing. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346.) We cannot say that the Commission proceeded upon a principle or theory fundamentally erroneous, when it determined that the amount to be deemed the net income of relator under a fair agreement with its parent corporation should be exactly the same figure at which the parent's net income from New York business would have been fixed had it itself transacted the New York business. That was a natural and fair method of ascertaining the relator's proper net income in the absence of data tending to prove error and its exact amount, within the principle laid down in the statute which provided that " in determining such entire net income the Tax Commission shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be or could have been

**136** People ex rel. Studebaker Corporation *v.* Gilchrist.

Third Department, May, 1926. [Vol. 217]

obtained from dealing in such products, goods or commodities." (Tax Law, § 211, subd. 9, ¶ 3, added by Laws of 1920, chap. 640, as amd. by Laws of 1922, chap. 507.)

The tax of 1921 should be reduced to $9,398.66 and the tax of 1922 should be reduced to $11,936.24, to correct the errors conceded by the Tax Commission, and as so modified the determination of the Tax Commission should be confirmed, without costs.

All concur, except H. T. Kellogg, J., dissenting with an opinion.

H. T. Kellogg, J. (dissenting). I cannot agree with Judge Hinman. The tax is sought by him to be upheld under the provisions of paragraph 3 of subdivision 9 of section 211 of the Tax Law. That paragraph deals with the case of a corporation the stock of which is owned by another corporation and the business of which is the acquisition or disposition of the products of such other corporation in such a manner as to create a loss or improper net income. It provides that the Commission may " determine the amount which shall be deemed to be the entire net income of the business of such corporation for the calendar or fiscal year." It further provides that " in determining such entire net income the Tax Commission shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be or could have been obtained from dealing in such products, goods or commodities." The Attorney-General, in his brief dealing with the tax base in this case, makes the following concession: " These figures were arrived at by taking such a proportion of the combined net income of the parent corporation and its subsidiaries as the total determinative assets of those corporations bore to the determinative assets of those corporations allocated to the State of New York." Clearly, without a statute authorizing such a method, " fair profits " which might have been made by the relator, from the sale of the products of the parent corporation, under a fair contract with that corporation, could not in reason be predicated upon a comparison of the New York assets of the two corporations with their total assets. Such a method treats the assets of the two corporations as if they were the assets of a single consolidated corporation. It is opposed to the method prescribed which requires a comparison between the assets of the one corporation as contrasted with the assets of the other corporation if the contract between them had been " fair." No effort was made by the Tax Commission to determine what the profits of the relator would have been under a " fair " contract with the parent corporation. The tax, therefore, was not assessed upon a correct theory and should not stand.

Determination modified by reducing the tax of 1921 to $9,398.66, and the tax of 1922 to $11,936.24, to correct errors conceded by the Tax Commission, and as so modified determination confirmed, without costs.