THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE STUDEBAKER CORPORATION OF AMERICA, Appellant, *v.* JOHN F. GILCHRIST et al., Constituting the State Tax Commission, Respondents.

**Tax — franchise tax — corporations — stock of corporation doing business in this State owned entirely by foreign corporation — franchise tax improperly assessed, under Tax Law on July 1, 1922, upon basis of consolidated income of both corporations, against subsidiary, whose business was sale of goods manufactured by parent corporation — tax not sustainable on theory that fair and reasonable profit of subsidiary would absorb entire profit of principal from business done with subsidiary — tax not sustainable under provision of statute that combined report may be permitted or required by Tax Commission — business of parent corporation and of subsidiary to be reached ,by assessments directed to each proportioned to value of their separate privilege.**

1. Where all of· the stock of a foreign corporation, doing business in this State, was owned by another foreign corporation, which did no business here, the business of the subsidiary being to sell here and elsewhere motor vehicles, parts and accessories, manufactured by the parent corporation in other States, and the business of the subsidiary showed a loss while that of the parent corporation showed a large gain, a franchise tax was improperly assessed against the subsidiary corporation upon the basis of the consolidated income of subsidiary and parent, under the provisions of subdivision 9 of section 211 of the Tax Law as it read on July 1,· 1922.  (Cons.  Laws, ch. 60, amd. L. 1922, ch. 507.)  The statute made provision for a return on the basis of consolidated income by the owner corporation, where it did

business in this State, so as to be subject to our laws. It made no such provision as to the corporation that was owned. The *tax* as to it was to be measured by the value of *its* franchise, not the franchise of another.

2. The tax may not be sustained on the theory that the subsidiary conducted the business for the benefit of the parent corporation and that the Tax Commission was authorized by the statute, in determining the net income of the subsidiary, to consider the fair profits which, but for its agreement with its principal, it might have obtained in its business and to determine that profit to the agent in order to be fair and reasonable must absorb the entire profit to the principal from the business of the agency. The evidence affords no basis for a holding that a fair agreement between the parent which manufactured and the subsidiary which sold would have given the whole profit to the subsidiary and nothing to the parent. A fair and reasonable contract between corporations so related would have assured to the subsidiary the customary return upon the business of an agency.

3. The tax may not be sustained under other provisions of the statute permitting a joint report.

4. The business of the parent corporation, the principal, is to be reached under the statute by assessment directed to the principal and proportioned to the value of the privilege of acting as a principal. The business of the subsidiary, the agent or the conduit, is to be reached under the same statute by assessment directed to the subsidiary and proportioned to the value of the privilege of acting as a conduit or an agent.

*People ex rel. Studebaker Corp.* v. *Gilchrist*, 217 App. Div. 130, reversed.

(Argued November 15, 1926; decided December 31, 1926.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 27, 1926, which modified and confirmed as modified a determination of the State Tax Commission upon an application for the revision of franchise taxes under article 9-A of the Tax Law.

*E. J. Dimock* for appellant. Whether the attempt to assess was made upon a revised income basis or a consolidated basis, the assessment as made is invalid because unauthorized by the statute. The assessment is invalid on the revised income basis because the income taxed

116   People ex rel. Studebaker Corp. *v.* Gilchrist.

[244 N. Y. 114]            Points of counsel.                 [Dec.,

was not the income of the subsidiary, as required by statute, but the consolidated income of the parent. (*People ex rel. Thompson* v. *McComber*, 7 N. Y. Supp. 71; *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406; *Peterson* v. *Chic., etc., Ry. Co.*, 205 U. S. 364; *U. S.* v. *American Bell Tel. Co.*, 29 Fed. Rep. 17; *People* v. *American Bell Telephone Co.*, 117 N. Y. 241; *People ex rel. Edison L. & P. Co.* v. *Kelsey*, 101 App. Div. 205; *Procter & Gamble Co.* v. *Newton*, 289 Fed. Rep. 1013.) Whether the attempt to assess was made upon a revised income basis or a consolidated basis, the actual assessment against the relator was based on consolidated figures of assets and income of a non-resident parent and such an assessment is invalid as depriving the taxpayer of its property without due process of law. (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48.) If the attempt to assess was made upon a consolidated basis, the discrimination inherent in the statute and the discretion vested in the Tax Commission to adopt such a consolidated assessment, or to adopt a normal one, would deprive the taxpayer of its property without due process of law and deprive it of the equal protection of the laws. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Colon* v. *Lisk*, 153 N. Y. 188; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413; *People* v. *Klinck Packing Co.*, 214 N. Y. 121; *State* v. *Lyons*, 183 Wis. 107.)

*Albert Ottinger*, Attorney-General (*Wendell P. Brown* and *Claude T. Dawes* of counsel), for respondents. The taxes were properly assessed upon the basis of the combined entire net income and combined segregated assets of the parent corporation and its subsidiaries. (*Matter of Lorimier-Greenbaum Co., Inc.*, v. *Gilchrist*, 212 App. Div. 733; *People ex rel. Barcolo Manufacturing Co.* v. *Knapp*, 227 N. Y. 64; *People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346; *People ex rel. New York Realty Corp.* v. *Miller*, 92 App. Div. 116; *People ex rel. Wiebusch*

*& Hilger Co.* v. *Roberts,* 18 Misc. Rep. 530.) The assessments were not unconstitutionally imposed. (*People ex rel. Jaeckel & Sons, Inc.,* v. *State Tax Commission,* 209 App. Div. 120; *Matter of Lorimier-Greenbaum Co., Inc.,* v. *Gilchrist,* 212 App. Div. 733; *People ex rel. Butler, Inc.,* v. *Law,* 210 App. Div. 804; 240 N. Y. 644; *McCaskill* v. *United States,* 216 U. S. 504; *Linn & Lane Timber Co.* v. *United States,* 236 U. S. 574; *Miller & Lux* v. *East Side Canal Co.,* 221 U. S. 293; *Northern Securities Co.* v. *United States,* 193 U. S. 197; *United States* v. *United Shoe Machinery Co.,* 234 Fed. Rep. 127; *Chicago Mill & Lumber Co.* v. *Boatmen's Bank,* 234 Fed. Rep. 41; *Matter of Rieger,* 157 Fed. Rep. 609; *United States* v. *Milwaukee Refrigerator Co.,* 142 Fed. Rep. 247.)

Cardozo, J. "The Studebaker Corporation of America" is a New Jersey corporation. It sells automobiles and automobile accessories in New York and elsewhere. Its entire capital stock is owned by "The Studebaker Corporation," which manufactures the automobiles and the accessories in Indiana and Michigan, and sells them to subsidiaries. Of these subsidiaries the Studebaker Corporation of America is only one. Other subsidiaries (*e. g.,* Studebaker Sales Corporation of Ohio, Studebaker Bros. of Utah, Studebaker Bros. of California) do business in other districts.

By agreement made August 25, 1920, the parent corporation (the manufacturer) agreed to sell its motor vehicles and parts and accessories to this subsidiary (The Studebaker Corporation of America), the distributor, at the retail list price (to be fixed by the manufacturer), less 25% discount on cars and $33\frac{1}{3}$% discount on parts. The discount was too small to enable the subsidiary to do business at a profit. Its loss during the year 1920 was $449,133.14. There was a loss during the same year to all the other subsidiaries, except the Studebaker Sales Corporation of Ohio. On the other hand, the parent

corporation made in the same year a net profit of
$11,434,954.41 from the operations of its business every-
where, which included, of course, the process of manu-
facture as well as the act of sale. The loss sustained by
the subsidiary now before us, The Studebaker Corpora-
tion of America, was taken over by the parent at the
close of the year. Apparently this had been done in
previous years also. At all events, the subsidiary was
indebted to the parent on December 31, 1920, for upwards
of nine million dollars.

The year 1921 makes a continued showing of loss.
The subsidiary before us, operating under the same agree-
ment, sustained a loss of $2,168,178.63, which again was
taken over by the parent. Losses were sustained by the
other subsidiaries except the Studebaker Sales Company of
Ohio. The net profits of the parent were $13,684,952.73.
These profits, like those of the preceding year, were the
result of the transaction of its business everywhere.

Article 9-A of the Tax Law (Cons. Laws, ch. 60; § 209)
is to the effect that every domestic corporation shall pay
for the privilege of exercising its franchise in this State,
and every foreign corporation for the privilege of doing
business, an annual franchise tax to be computed by the
Tax Commission upon the basis of its entire net income
for the year next preceding. The exceptions established
by section 210 are unimportant for the case before us.
The appellant, The Studebaker Corporation of America,
made a report in 1922 for its income for the year ending
December 31, 1920, and in 1923 for the year ending
December 31, 1921. These reports showed that there had
been no net income for either of these years, but on the
contrary losses of $449,133.14 and $2,168,178.63, respec-
tively. On the basis of these reports, the only tax payable
would be the minimum tax prescribed by the final para-
graph of Tax Law, section 214, $12.14 for 1921, and $15.91
for 1922. The Tax Commission imposed a tax upon the
basis of the consolidated income of subsidiary and parent,

gaining the requisite information from reports under the Federal law.   As thus computed the tax was $9,671.27 in one year and $15,580.71 in the other.   Upon applications for revision under Tax Law, section 218, slight errors˙ of computation were corrected, and the taxes as thus reduced confirmed.   There was a correction of other errors of computation at the Appellate Division with confirmation as modified, one member of the court dissenting.   The taxes, as corrected, stand at $9,398.66 and $11,936.24, respectively.

The case involves the construction of subdivision 9 of section 211 of the Tax Law as it read on July 1, 1922 (Tax Law, as amended by L. 1922, ch. 507).   We are not concerned at this time with later amendments which became effective in 1925 (L. 1925, ch. 322).   Subdivision 9 of section 211, as it stood before the amendment of 1925, contained the following provisions:

" Any corporation owning or controlling, either directly or indirectly, substantially all of the capital stock of another corporation, or of other corporations, liable to report under this article, may be required to make a consolidated report showing the combined net income, such assets of the corporations as are required for the purposes of this article, and such other information as the tax commission may require, but excluding inter-corporate stockholdings and intercorporate accounts.

" The tax commission may permit or require the filing of a combined report where substantially all the capital stock of two or more corporations liable to taxation under this article is owned by the same interests.   The tax commission may impose the tax provided by this article as though the combined entire net income and segregated assets were those of one corporation, or may, in such other manner as it shall determine, equitably adjust the tax.

" Where any corporation liable to taxation under this article conducts the business whether under agreement or otherwise in such manner as either directly or indirectly

**120** People ex rel. Studebaker Corp. *v.* Gilchrist.

[244 N. Y. 114]      Opinion, per Cardozo, J.      [Dec.,

to benefit the members or stockholders of the corporation, or any of them, or any person or persons, directly or indirectly interested in such business by selling its products or the goods or commodities in which it deals at less than a fair price which might be obtained therefor, or where such a corporation, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the corporation so owning the substantial portion of its capital stock in such a manner as to create a loss or improper net income, the tax commission may require such facts as it deems necessary for the proper computation provided by this article, and may for the purpose of the act determine the amount which shall be deemed to be the entire net income of the business of such corporation for the calendar or fiscal year, and in determining such entire net income the tax commission shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be or could have been obtained from dealing in such products, goods or commodities."

The first paragraph of the subdivision quoted has no application to the situation now before us. It deals with a case where the parent corporation as well as the subsidiary is subject to the taxing power of this State, and is required by appropriate direction to make report on the basis of the consolidated income. No such direction has been made. The parent corporation in the Studebaker system is organized under foreign laws and manufactures its products in States far distant from our own. We do not now inquire whether the State of New York might disregard the subsidiary as a mere cover or pretense and lay a tax upon the parent as upon a corporation doing business here through the instrumentality of an agent (*Procter & Gamble Co.* v. *Newton,* 289 Fed. Rep. 1013; *Chicago, M. & St. P. Ry. Co.* v. *Minn. Civic Assn.,* 247 U. S. 490; *So. Pac. Co.* v. *Lowe,* 247 U. S. 330, 337; *U. S.* v.

*Reading Co.*, 253 U. S. 26, 61, 63; *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U. S. 333, 337; *Gramophone & Typewriter, Ltd.*, v. *Stanley*, 1908, 2 K. B. 89; cf. Ballantine, Separate Entity of Parent & Subsidiary Corporations, 14 Calif. Law Rev. 12, 18, 20). If this or something not unlike might have been done, the Commission has not sought to do it. The parent has not been taxed, nor has any requirement been addressed to it to make return as to its business. The only tax imposed has been a tax on the subsidiary, to be measured by the value of *its* franchise, not the franchise of another. The subsidiary in these transactions, if it had any genuine autonomy (*Procter & Gamble Co.* v. *Newton, supra*), was either a buyer or an agent. If in truth and in good faith it was a buyer of the parent's products, its operations were its own. By the very terms of the hypothesis, they are not to be identified with the operations of the seller. On the other hand, if the sale is to be disregarded as nothing but a cover for an agency, the value of the privilege of doing business in a corporate form as agent for another is not to be confused with the value to the principal of acting through the agent. The position of the subsidiary may be no better than if its certificate of incorporation had stated that the purpose of its business was to act as factor or intermediary for the products of the parent. The position may be no better, but it can also be no worse. The statute makes provision for a return on the basis of consolidated income by the corporation that is owner where the owner does business in this State so as to be subject to our laws. It makes no such provision, or made none till the act of 1925 corrected the omission, for a return by the corporation that is owned.

The meaning of the final paragraph of section 211 (subdivision 9) is still to be considered. It is this paragraph, and not the first, that supplied a basis for the assessment in the judgment of the court below. We think the inference is permissible that loss would have been avoided if a

contract fair and reasonable in its terms, such as would naturally have existed between independent corporations, had been made between the subsidiary as the agent and the parent as the principal. Whatever the form of the transaction, the business of the subsidiary was in fact a selling agency, or so a trier of the facts might find (*Lehigh Valley R. R. Co.* v. *Delachesa,* 145 Fed. Rep. 617; *The William Van Driel, Sr.,* 252 Fed. Rep. 35). If the parties had been dealing upon a normal business footing, the discount would have been large enough to allow the selling agent a fair or customary commission upon the sales effected by the agency. There would have been little difficulty, one would suppose, in placing evidence in the record from which a conclusion could be drawn as to the extent of such commissions and the fair profits that would have been earned if such commissions had been paid and a reasonable return allowed on capital invested. Nothing of the kind was proved. Instead, the tax has been laid upon the theory that the profit to the agent in order to be fair and reasonable must absorb the entire profit to the principal from the business of the agency. In the view of the Appellate Division, " the amount to be deemed the net income of relator under a fair agreement with its parent corporation should be exactly the same figure at which the parent's net income from New York business would have been fixed had it itself transacted the New York business " (217 App. Div. 130, 135). The privilege for which the appellant has been taxed is the privilege of selling in New York the products of its principal. The business transacted by the principal included the process of manufacture carried on in Michigan and Indiana, a process which was anterior of necessity to any service by the agent. We find no basis for a holding that a fair agreement between the parent which manufactured and the subsidiary which sold would have given the whole profit to the subsidiary and nothing to the parent.

We assume once again that the taxing officers of the State may disregard a subsidiary altogether as a book-keeping device when there is evidence to justify the finding that it is that device and nothing more. In that event, there is power to tax the parent corporation, the owner of the stock, on the basis of the consolidated income apportioned to New York. Stock ownership is not enough without more to bring the parent owner within the State if the subsidiary " has its own, set of officials who actually conduct its business " (*Procter & Gamble Co.* v. *Newton, supra*), and this though their tenure may be precarious in that the parent can oust them as soon as their terms expire by the choice of new directors. At least there is no decision yet announced that has attempted to go farther (cf. *Cannon Mfg. Co.* v. *Cudahy Co., supra*). Before " the corporation *persona* " may be ignored, the evidence must show that " the subsidiary is not left with any autonomy," (LEARNED HAND, J., in *Procter & Gamble Co.* v. *Newton, supra*), and that the parent though in form speaking and acting through another, is operating the business directly for itself. The taxing officers made a choice which relieves us of the duty of determining whether the sparse evidence in this record upholds a finding of dominion so absolute and abdication so complete. Instead of passing over the subsidiary as the mere shadow of a name, they chose to view it as an entity, a separate and independent center of energy and action. So viewing it, they have said that we are to substitute for the contract made the one that would be fair and reasonable if the two cor-porations were acting at arms length. A fair and reason-able contract between corporations so related would have assured to the subsidiary the customary return upon the business of an agency. The argument for the State would lead to the conclusion that such a contract might exist, and the State even then be entitled to something more. The statute in this paragraph postulates the

existence of separate corporations, each of them conducting a business of its own. The meaning is that the contract between parent and subsidiary shall be as liberal and just as it would be if the subsidiary were a stranger. Activities equal to those of a factor or other agent are to be rewarded at a rate appropriate to the true relation. Activities less than these, or so slight as to be nominal, are to be rewarded at a rate no higher. Nothing in this record gives support to a conclusion that the distributor was lacking in the corporate organization essential for the mechanical operations of sale and distribution. It was more than a figment, however much its policy may have been directed from without. We have no need to consider how the case would stand if it had not exercised in any form the privilege of doing business for which the tax is to be paid. Where the subsidiary has done nothing, there might be difficulty in showing why its fair share of the profits should be anything at all.

If the first and third paragraphs do not sustain the tax, there can be little basis for an argument that the second paragraph applies. That paragraph assumes the existence of two corporations both owned by like interests and both subject to taxation. It assumes that the two shall join in a single or combined report, and the tax then laid upon the two, or divided between them according to some equitable adjustment. There is thus a two-fold difficulty in applying this paragraph to the situation now before us. One is that the two corporations have not joined in any report, and that their equities as between themselves have been neither adjusted nor considered. A second is that if both were before us, there would be no basis for an adjustment that would place upon the subsidiary the undivided burden. The only theory on which *both* parent and subsidiary may be taxed in this State for the exercise of a corporate privilege is that one is the principal and the other the agent. In that view of their relation, an equitable adjustment would require

that the agent bear the tax upon its profits as an agent, and the principal the tax upon its profits as a principal. If some other method of adjustment is to be followed, its basis must be found, not in the will of the assessors, but in a pronouncement of the statute.

Public policy may indeed require that a foreign corporation manufacturing its products elsewhere shall not be at liberty to market them here by subsidiary corporations subject to its complete control without exposing the subsidiary to the same taxation as the parent. Convenience may demand that a corporation supplying a disguise shall be taxed as if it were one with the stockholder by whom the disguise has been assumed. The difficulty is that in the absence of prescribed conditions no such public policy had been declared, when these taxes were imposed, by the only agency of government competent to declare it. Section 214, subdivision 7, was intended to apply to cases where a consolidated report had been filed by the parent corporation for itself and its subsidiary in accordance with section 211, subdivision 9, and was not extended till 1925 to cases where a report had been filed by a subsidiary alone. The parent, if required to make return to the Commission on a consolidated basis, would have had notice of the existence of a claim that it was doing business in the State. The opportunity would then have been at hand to prove that the subsidiary had an independent organization and an autonomous existence. In the absence of such notice there was no warning at any stage either to parent or to subsidiary that there was any denial by the State of the immunity of the one or the autonomy of the other. Even now, we search in vain through the briefs of the Attorney-General for argument or suggestion that the parent is here so as to be subject to our laws. There is thus substance, and not mere formality, in the requirement of notice, or of preliminary conditions that would be equivalent to notice. The taxing officers of the State

are mere administrative agents. They may not devise new forms and methods of taxation, however convenient or useful. They have no more inherent power to tax a corporation upon the income of its stockholder where the stockholder is another corporation than they have where the stockholder is a natural person. They do not help themselves by saying that the stockholder in the long run may be expected to pay the bill, so that little harm will be done, whatever the method of assessment. Assessment, however handy, must find its warrant in the statute. A statute levying a tax will not be extended by implication beyond the clear import of its terms (*Gould* v. *Gould*, 245 U. S. 151, 153). If one method of assessment or collection is pointed out, the courts will not permit the application of another on the theory that the Legislature might just as well have chosen it, since in the final devolution of the burden the result will be the same, or, at worst, not widely different (*U. S.* v. *Field*, 255 U. S. 257; *Stebbins* v. *Kay*, 123 N. Y. 31; *People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51). We take the statute as we find it. One who serves as a conduit for a payment to some one else may not be taxed upon that payment as if he had kept it for himself.

We have no thought in anything here said to curtail the limits of the taxing power under statutes differently contrived. A corporation masquerading in the disguise of a subsidiary may be compelled, when the disguise is pierced, to contribute to the fisc as its true activities require. We would not be understood to hold that by appropriate enactment a burden as heavy may not be laid upon the corporate body supplying the disguise and thus promoting the deception. Problems such as these must be postponed until there is brought before us a statute which gives occasion for an answer. Such is not the scheme of the statute now before us. The business of the parent corporation, the principal, is to be reached under the statute by assessment directed to the principal

and proportioned to the value of the privilege of acting as a principal. The business of the subsidiary, the agent or the conduit, is to be reached under the same statute by assessment directed to the subsidiary and proportioned to the value of the privilege of acting as a conduit or an agent. When the burden is so restricted, these taxes may not stand (*People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346, 352).

The order of the Appellate Division should be reversed, with costs in the Appellate Division and in this court, the determination of the State Tax Commission annulled, and the proceeding remitted to the Commission for the revision of the taxes in accordance with this opinion.

CRANE, J. (dissenting). The Studebaker Corporation is the name of a company organized under the laws of the State of New Jersey engaged in the manufacture of motor vehicles in the States of Indiana and Michigan. It has in various States subsidiary corporations for the sale and disposition of its product. One of these corporations does business in the State of New York. It is the relator in this case, and is named " The Studebaker Corporation of America." Organized under the laws of the State of New Jersey, it disposes of the product of the parent company in New York State.

That it should be taxed for the privilege of doing business in this State upon the basis of its net income is conceded. This litigation has arisen over the determination of its net income.

The parent company, the Studebaker Corporation, owns all the stock of the Studebaker Corporation of America, the relator, which, as I have said, was its subsidiary, or selling agent, in the State of New York. By an arrangement between the two corporations, motor vehicles, parts and accessories were sold by the parent company to its subsidiary at a 25 per cent discount on cars, and a 33⅓ per cent discount on parts. The result of this arrange-

[244 N. Y. 114]     Dissenting opinion, per Crane, J.          [Dec.,

ment was that during the year 1920 the relator sustained a loss of $449,133.14, and for the year 1921 a loss of $2,168,176.63. These figures were purely artificial, mere matters of bookkeeping. As a matter of fact, they did not represent an actual loss; the figures were the result of the arbitrary discount apparently allowed by the parent company. The discount might have been anything; the result would have been the same to the parent company which owned all the stock, and merely used its subsidiary as a means of disposing of its cars. Whatever may have been the distinct corporate entity, in reality and in fact one was the creature of the other. I do not mean to say that they were one and the same corporation for the purpose of taxation, but they were one and the same corporation regarding control, and for the purpose of this discount. During these years the parent company made a profit in 1920 of $11,434,954.41, and in 1921 of $13,684,952.73. Apparently there is no question about the loss of the subsidiary being a mere bookkeeping item; not an actual loss, but a result reached under the system of doing business devised by the parent corporation which was making all the profits. This is recognized in the main opinion which very frankly states that the relator could have been taxed upon the fair profits which would have been earned under a fair and reasonable agreement.

As the parent company created a situation and by its system established a fictitious loss on the business in New York, who is to determine what a fair profit would have been on the sales here? Who would know better than the persons conducting the business and ultimately making the profit? It must be presumed that the Studebaker Corporation, the parent company, and even its subsidiary knew what this court is undertaking to state, namely, that it was taxable upon the basis of the net income which would be derived from the sales in New York State under a fair and reasonable arrangement

with the manufacturer. Knowing this law, the relator furnished no such information.

We have, therefore, at the outset of this case these facts beyond dispute, treating of course, the relator as an independent corporation having an entity and a vitality of its own. It is carrying on business in New York State; its loss is fictitious. It may have made profits, or should have made profits, on its business in the State. Under a fair arrangement with the manufacturer, it could have made profits, or might have made them. The manufacturer owns all its stock and made the profits, if any. All but one of its subsidiaries in other States made losses, while the parent company made the profits according to the above figures.

What were the taxing authorities here in the State of New York going to do? They were in duty bound under article 9-A of the Tax Law to assess and tax the relator upon the basis of its net income, or the net income which it should have had. How were they to ascertain this? By any fair and reasonable method, and such means as they had at their disposal in the first instance. They had the returns made by the companies to the Federal government. Later, the relator furnished the figures regarding its business, that of the parent company and of its various subsidiaries. To determine what should have been this fair return or net profit on the business in this State, the Tax Commissioners allocated the net profits of the parent company in proportion to all its assets and that of all its companies to the assets of the relator in New York State. The figures were arrived at by taking such a proportion of the combined net income of the parent corporation and its subsidiaries as the total determinative assets of those corporations bore to the determinative assets of those corporations allocated to the State of New York. Now this might not have been accurate; it was apparently the only method, or at least a lawful method of proceeding in the absence of other

9

information. The relator failed to furnish any other information or to show what would have been a fair profit under a reasonable agreement with the holding company. The relator was afforded an opportunity to furnish this information. The tax as fixed by the Commission was presumptively correct. The relator had the opportunity and the burden of showing it to be incorrect. (*People ex rel. Barcalo Mfg. Co.* v. *Knapp*, 227 N. Y. 64; *People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346; *Matter of Lorimier, Greenbaum Co., Inc.,* v. *Gilchrist*, 212 App. Div. 733.)

I know of nothing in the law which prevents the Tax Commission from adopting this method of allocation in order to determine the net profits when other information is not forthcoming and it is conceded that the books do not correctly show the actual facts. It was for the relator to show whether or not there was an actual instead of a fictitious loss, in view of all the circumstances of this case. It is no answer in my judgment to say that the Tax Commission could not have compelled the parent company, a foreign corporation, to make a return or give information. The fact is that the information was furnished according to the figures which the Commission used. The Commission adopted the figures furnished by or through the parent company and the relator.

This case in my judgment comes within subdivision 9 of section 211 of the Tax Law, and subdivision 7 of section 214. The latter provision reads:

" In case any report is made as provided by subdivision nine of section two hundred and eleven of the tax law, the tax commission may assess the tax against either of the corporations whose assets or net income are involved in the report and upon the basis of the combined entire net income and the combined segregated assets of the corporation and upon such other information as it may possess, or may adjust the tax in such other manner as it shall determine to be equitable."

A method specifically provided for corporations coming within these subdivisions is not improperly or illegally used to ascertain net profits under such conditions as here exist, although the condition may not be specifically stated in the statute.   The Commission had a duty to discharge and that was to ascertain what would have been the net profit under a fair agreement with the holding or parent company.   In the absence of other means of ascertainment or of other information furnished by the relator, it was justified in adopting the figures which were given and arriving at the net profits according to the methods used in other and similar cases.   If the parent company had been doing business directly in New York State, there is no question about the correctness of the methods adopted by the Tax Commission.   What can be the objection by the relator to such methods when it is a mere subsidiary carrying on business in New York State for the parent company, and fails to show a true state of facts?   The only answer to be made is that such method is not specifically prescribed in the statute for such specific relationship.   What is prescribed, however, is that the Tax Commission must find what the net profit was or would be, if any, under normal conditions on such business done in New York State.   To arrive at such a conclusion the Tax Commission could adopt and use any information it had, and this is specifically stated.   It did use the figures given by the relator and the process of allocation which was the correct method for ascertaining profit when a foreign corporation was doing business directly. In the absence of other information furnished by the relator, this in my judgment was legal and proper.

For these reasons I vote for affirmance of the action of the Tax Commission.

HISCOCK, Ch. J., McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., dissents in opinion in which POUND, J., concurs.

Ordered accordingly.