In the Matter of the Application of Fox FILM CORPORATION, Petitioner, for a Certiorari Order against M. FRANK LOUGHMAN and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 30, 1931.

*Saul E. Rogers* [*Henry Brill* and *Percy Heiliger* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown, Assistant Attorney-General,* of counsel], for the respondents.

RHODES, J.   This is a certiorari to review a determination of the State Tax Commission made upon the petitioner's application for revision and resettlement of its account for an annual franchise tax under article 9-A of the Tax Law for the year beginning November 1, 1923, measured by the corporation's net income for the calendar year 1922.   The material facts are not seriously in dispute and so far as this case is concerned require but brief recital.

Petitioner is a domestic corporation organized in 1915, engaged at No. 850 Tenth avenue, New York city, in the business of producing, renting and distributing motion picture films.   It owns the entire capital stock of six domestic corporations and of seven foreign corporations, none of which foreign subsidiaries transacts business in this State, and the income of each was earned solely from business transactions abroad.

Petitioner leases the premises which it occupies from Fox Film Realty Corporation, owner of the premises, and one of its domestic subsidiaries.   The said realty corporation was organized by petitioner solely as a holding company for the purpose of owning, holding and leasing to petitioner said real property and equipment.

In July, 1923, petitioner filed the report required by article 9-A of the Tax Law to enable the Commission to determine the amount

of petitioner's franchise tax for the year 1923, measured by its net income for the calendar year of 1922. On the figures presented, the petitioner claimed that 16.59785 per cent of its assets should be allocated to the State of New York, and that such percentage on the amount of its profits reported to the Federal Government for the same year upon which the tax thereon at the rate of four and one-half per cent should be levied, would establish a tax of $21,292.74. The Commission, however, after a rehearing and revision, added to the amount of petitioner's assets allocated to the State of New York the value of the assets of the said subsidiary realty corporation, thus increasing the amount of the assets apportioned to this State to 31.6366 per cent, and also added to the income chargeable to petitioner for that year the amount of the earnings of its seven foreign subsidiaries to the extent that such earnings had been loaned to the petitioner and which showed upon the books of the respective corporations as loans and indebtedness of petitioner. The effect of thus increasing the percentage of petitioner's assets allocated to this State, and increasing the amount chargeable to it as income, was to produce a tax amounting to the sum of $45,619.32, which increase petitioner claims is erroneous, unauthorized and unlawful.

Petitioner complains that the assets of the realty corporation were inproperly included for the reason that section 209 of article 9-A of the Tax Law, as amended by chapter 640 of the Laws of 1920, then in effect, expressly excepted from the payment of franchise tax thereunder corporations enumerated in section 210 of the article. The corporations thus excepted and enumerated by section 210 include corporations "wholly engaged in the purchase and sale of, and holding title to, real estate for themselves." As to such realty corporations, a different tax was imposed by section 182 of the law then existing, and the said subsidiary realty corporation had filed its report and paid its tax thereunder. The Commission in adding to petitioner's assets those of the subsidiary realty corporation, apparently assumed to act under section 211, subdivision 9, of the Tax Law, which provided that "Any corporation owning or controlling, either directly or indirectly, substantially all of the capital stock of another corporation, or of other corporations, *liable to report under this article*, may be required to make a consolidated report * * *." But the realty corporation was not a corporation liable to report under article 9-A, being expressly excepted from taxation thereunder by the provisions of sections 209 and 210, and by section 211 only corporations taxable thereunder were required to make the report thereby called for. (*People ex*

*rel. United Hotels Co. of America* v. *State Tax Commission,* 239 N. Y. 516.)

The Commission suggests, however, that the realty corporation was not *wholly* engaged in the purchase of, selling and holding title to real estate for itself, for the reason that its property which it has rented to petitioner, includes studio, laboratory for printing films, laboratory equipment, printing machines and development machines, it appearing that the value of the equipment is over $200,000. But the equipment is employed only in connection with the real property and is rented therewith to petitioner. It is not employed otherwise by the realty corporation. Nothing appears in the record to the contrary and the realty corporation was, therefore, not thereby " liable to *report* " under article 9-A.

The Commission insists further that the realty corporation organized by petitioner as a subsidiary was a subterfuge; that to all intents and purposes the two corporations are one; that the realty corporation is not an actual separate or independent center of energy and action and that it was created merely to be used as an agency of tax evasion, basing the argument upon the fact that the entire capital stock of the realty corporation is owned by the petitioner and upon the fact it is owned, controlled and officered by and in behalf of petitioner which guaranteed its bonds issued for funds which were borrowed. This contention is not tenable, for the evidence does not establish any misrepresentation or suppression as to facts. There is nothing fictitious as to the apparent situation; the status is one created pursuant to and authorized by law, and the realty corporation must be recognized as a separate legal entity distinct from that of petitioner. (*People ex rel. Studebaker Corp.* v. *Gilchrist,* 244 N. Y. 114.)

It may be assumed that petitioner formed the holding company for the purpose of being liable to less taxation by this arrangement. It did only what the statute permitted and under the assurance of the statute that in such case it would be taxable as defined by the law then existing. Certainly it should not be chargeable with wrongful evasion, or impropriety, nor penalized for doing a lawful and an authorized act.

In addition it may be noted that section 211 was amended in 1928, by chapter 849, so as to remove the exemptions as to subsidiary realty corporations in a situation such as here presented. The action of the Legislature in adopting the amendment throws some light upon the meaning of the statute as it existed and was in force prior thereto.

Petitioner also complains that the Commission had no authority to include in the consolidated income of petitioner the income of

its foreign subsidiaries. This income consisted of surplus moneys earned abroad by these subsidiaries which were subsequently loaned to petitioner. The surpluses had never been distributed as dividends by the respective subsidiaries. The money thus loaned, therefore, belonged to them and not to petitioner. Under no other conceivable theory here involved could these earnings be treated as either assets or income of petitioner. These foreign subsidiaries, doing no business in the State of New York, were not liable to file a report under article 9-A; therefore, petitioner could not be required to file a consolidated report as to them. Here again the Commission asserts that the so-called loans by the subsidiaries to petitioner are mere bookkeeping devices and that the loans might never be repaid, and are merely a subterfuge. This is only a surmise or suspicion unsupported by facts. Where evidence is as consistent with innocence as to the contrary, the innocent construction should be adopted. (*Constant* v. *University of Rochester*, 133 N. Y. 640; *Morris* v. *Talcott*, 96 id. 100; *Shultz* v. *Hoagland*, 85 id. 464.)

Legally, as the facts stand, the undistributed surplus of each subsiduary belongs to it and not to petitioner. What has already been said relative to the realty corporation as to the necessity of recognizing its separate status, is applicable to the relations of petitioner with its foreign subsidiaries, and the principles stated in *People ex rel. Studebaker Corp.* v. *Gilchrist* (*supra*) are equally relevant.

The contention of the Commission can be upheld only by reading into the statute something not therein expressed, nor provided for.

The statute, therefore, did not provide for nor authorize the action of the Commission in including the assets of the subsidiary realty corporation with those of the holding company, nor in including as income of the petitioner the earnings of its foreign subsidiaries which had been loaned to it.

The determination should, therefore, be annulled and the proceedings remitted to the State Tax Commission to make a revision of the taxes in accordance with this opinion, with fifty dollars costs and disbursements to petitioner.

All concur, except HINMAN, J., who dissents, with an opinion.

HINMAN, J. (dissenting). It is quite clear to me that the realty corporation does not escape taxation under article 9-A of the Tax Law by the exemption declared in the case of certain realty corporations. An exemption provision in a taxing statute must be construed strictly against the party urging the exemption. In this instance, among the classes of corporations declared exempt from

taxation under said article 9-A are corporations " *wholly* engaged in the purchase and sale of, and holding title to, *real estate* " for themselves. (Tax Law, § 210, as amd. by Laws of 1920, chap. 640.) This subsidiary realty corporation was the owner of a large amount of personal property (which it owned and rented in addition to building and fixtures), consisting of laboratory equipment, motion picture machines, printing machines and development machinery. In the tax report of the realty corporation, filed by it under Tax Law, section 182 (Respondent's Exhibit 25), that company gave average value of its personal property at $140,386.81. It cannot be said that a corporation which owns and rents such a large amount of valuable personal property is " *wholly* engaged in the purchase and sale of, and holding title to, *real estate.*" For that reason I vote to confirm the determination of the Commission on that phase of the case. It was proper to consolidate the subsidiary realty corporation with the parent because the exemption as a realty corporation as defined in said section 210 of the Tax Law cannot be claimed.

Moreover, I think the profits of the petitioner's foreign subsidiaries, entered upon petitioner's books as loans, were properly treated as dividends and properly included in the net income used to measure the tax. There is no proof that those so-called loans were evidenced by notes or other writing, that there was any agreement that they should bear interest, that there was any agreement to repay them or, if so, at any definite time. In fact counsel for petitioner frankly admitted upon the hearing that the earnings of the subsidiaries might never be distributed. These so-called loans seem like mere bookkeeping devices to evade taxation, or so the Commission might conclude in the absence of a clearer showing that they were not actual distributions or dividends. (*Christopher* v. *Commissioner of Internal Revenue,* 13 B. T. A. 729; *Appeal of Walle & Co., Ltd.,* 1 id. 1064; *McLoon Co.* v. *Commissioner of Internal Revenue,* 11 id. 816; *Appeal of Bockius Realty Co.,* 1 id. 939; *Chattanooga Savings Bank* v. *Brewer,* 17 F. [2d] 79; *Rockefeller* v. *United States,* 257 U. S. 176; *Southern Pacific Co.* v. *Lowe,* 247 id. 330.)

I, therefore, dissent and vote to confirm the determination.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to State Tax Commission to make a revision of the taxes in accordance with the opinion.