No. 34,417

In the Matter of the Protest of THE MORTON SALT COMPANY. THE MORTON SALT COMPANY, *Appellant,* v. THE STATE OF KANSAS, *Appellee.*

(95 P. 2d 335)

Opinion filed November 10, 1939.

*Roy C. Davis, Warren H. White, Frank S. Hodge, Wm. H. Vernon, Jr., Eugene A. White,* all of Hutchinson, *Edward H. Stearns, Robert V. Jones, Lloyd M. McBride, Edward H. Baker, Jr.,* and *B. W. Carrington, Jr.,* all of Chicago, Ill., for the appellant.

*John K. Speck, Vernon C. Rosenstahl* and *James D. Dye,* attorneys for the state tax commission, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: The Morton Salt Company, having paid income taxes for the years 1933 to 1936, inclusive, filed with the state tax

commission a claim, and an amended claim, for a refund of parts of the taxes paid. These claims were heard by the tax commission and denied. The taxpayer appealed to the district court, where judgment was rendered for respondent, and it has appealed to this court.

In the trial court the facts were stipulated. We state or quote so much of the stipulation as is pertinent to this appeal, as follows: The Morton Salt Company is an Illinois corporation, with its principal office in Chicago, and is duly authorized to transact business in this state. It filed income-tax returns and paid the taxes shown thereby for the years 1933, 1934, 1935 and 1936.

"Prior to and at all times since January 1, 1933, it has been engaged in the business of mining, manufacturing, refining, distributing, buying and selling salt and kindred products in a large number of states. It owned and operated salt wells in Michigan and Kansas and salt wells and salt mines in Texas, and produced salt by solar process in Utah and California; and in conjunction therewith, it owned and operated in each of those states, plants for the manufacturing and refining of salt and kindred products. Through its principal office in Chicago, Ill., and through its branch offices in various states and through traveling salesmen it distributed and sold its products throughout a major portion of the United States. In addition, it purchased rock salt from other corporations in Michigan, Louisiana, Kansas and New York and distributed and sold the rock salt thus purchased. All the activities described in this paragraph contributed to the total net income of the Morton Salt Company."

During the time in question the appellant made no local sales in Kansas. During that time it owned and maintained, but did not operate, certain salt wells and equipment at Little River, Kan. It received no income from that property, and the cost incurred in connection with its ownership and maintenance of that property for each of the four years is stated. In its returns for 1933 and 1934 appellant deducted the cost incurred in connection with its ownership and maintenance of its property at Little River from income directly allocated to Kansas. These deductions were disallowed by the tax commission, and deficiency assessments for both years were made on December 16, 1935, which deficiencies appellant paid. Because of this action the cost incurred for the maintenance of the Little River property for the years 1935 and 1936 was not deducted in appellant's income-tax returns for those two years.

"In order to expand and perfect its sales organization, the Morton Salt Company, prior to January 1, 1933, acquired all or most of the stock of the Royal Crystal Salt Company, a Utah corporation with its principal place of

business in Salt Lake City, Utah, the Mulkey Salt Company, a Michigan corporation with its principal place of business in Detroit, Mich., and the Ruggles & Rademaker Salt Company, a Michigan corporation with its principal place of business in Manistee, Mich. The officers and directors of the Morton Salt Company and of each of the subsidiaries are not identical, each corporation being operated as a separate entity, with its own officers, its own employees and its own books and records. During the years in question, none of the subsidiaries owned any property, made any sales, employed any persons, maintained any officers or transacted any business of any kind whatsoever in Kansas. The salt sold by each subsidiary was purchased from the Morton Salt Company at cost, but none of the sales thus made by the Morton Salt Company to those subsidiaries was made in Kansas. The activities of each of the subsidiaries were confined entirely to selling, none of said subsidiaries owning any salt wells or plants, and none producing any salt. The arrangement described in this paragraph has been followed for a period of several years prior to the passage of any income-tax law in Kansas, and has in no way been varied since the passage of such law."

The total property owned by each of its subsidiaries was stated separately for the years 1934, 1935 and 1936.

"The selling expenses of the Morton Salt Company and of the subsidiaries for the years 1934, 1935 and 1936 were as follows:

|  | 1934 | 1935 | 1936 |
|---|---|---|---|
| Morton Salt Company | $3,668,865.42 | $3,724,339.92 | $3,572,996.32 |
| Ruggles and Rademaker Salt Company | 200,075.34 | 192,195.42 | 176,113.56 |
| Mulkey Salt Company | 338,033.71 | 348,309.79 | 318,110.04 |
| Royal Crystal Salt Company | 133,647.59 | 126,208.10 | 128,144.94 |

"From time to time the subsidiaries have declared and paid dividends on their stock held by the Morton Salt Company, and all such dividends paid during the years 1934, 1935 and 1936 have been reported by the Morton Salt Company in its income-tax returns to Kansas for those years, but such dividends have been directly allocated without the state of Kansas."

The net income of the subsidiaries for those years was set out.

"In its income-tax returns for the years 1934, 1935 and 1936 the Morton Salt Company did not include in its apportionable net income the net income of the three subsidiaries. . . . On June 26, 1937, a deficiency assessment was made with respect to the years 1934, 1935 and 1936, and the deficiency was paid under protest on July 15, 1937.

"In making the deficiency assessment of June 26, 1937, the Kansas state tax commission added to the apportionable net income reported by the Morton Salt Company in its returns for those three years, the net income of the subsidiaries. . . . The Kansas tax commission included the property owned by the subsidiaries in the property ratio employed by the Morton Salt Company in its return for the years 1934, 1935 and 1936 for the purpose of allocating apportionable net income to Kansas, but the commission did not include the selling expenses of either the Morton Salt Company or any of the subsidiaries in the expense ratio employed by the Mortor Salt Company in its returns for those three years for the purpose of allocating apportionable

net income to Kansas; nor did the commission employ any selling expense ratio in determining said deficiency assessment for any of those three years, separate and apart from the property, expense and sales ratios employed by the Morton Salt Company for the purpose of allocating apportionable net income to Kansas for the three years in question.

"All the facts and figures set forth in the income-tax returns filed by the Morton Salt Company for the years 1933 to 1936, inclusive, are true and correct statements of fact, except insofar as it is contended by the Kansas tax commission that the returns do not reflect the net income received from business done in Kansas in the particulars set forth in the deficiency statements of December 16, 1935, and June 26, 1937.

"The Morton Salt Company filed a claim for refund under date of October 2, 1937. A hearing on said claim was had before the Kansas tax commission on November 4, 1937. Under date of November 27, 1937, the Morton Salt Company filed an amended claim for refund. On August 8, 1938, the Kansas tax commission denied said claim for refund and said amended claim for refund.

"If the theories of the Kansas tax commission in making the deficiency assessments of December 16, 1935, for the years 1933 and 1934 and the deficiency assessment of June 26, 1937, for the years 1934, 1935 and 1936 are correct as a matter of law, then it is agreed that the computations set forth in each of said deficiency statements are correct as a matter of mathematics. If the contentions of the Morton Salt Company, as set forth in its claim for refund and in its amended claim for refund, are correct as a matter of law, then it is agreed that the computations set forth in said claim for refund and said amended claim for refund with respect to the amount due the Morton Salt Company are correct as a matter of mathematics."

Broadly speaking, the claim and amended claim for refund was based upon the contention that the tax commission erroneously included the net income of the three subsidiaries in the apportionable net income of the taxpayer for the years 1934, 1935 and 1936, and, second, erroneously disallowed the cost of maintaining the Little River property as a deduction from income of the taxpayer directly allocated to Kansas. This last claim was divided into two parts, because that item was handled differently for the years 1933 and 1934 than it was for the years 1935 and 1936, but basically involved the same question.

Our statutes (G. S. 1935, 79-3203b, 79-3209, first sentence, 79-3218 and 79-3219b) provide a definite method of computing income rates and of allocating the net income between Kansas and other states of a corporation such as the stipulated facts disclose appellant to be. It is conceded the tax commission made appropriate regulations in harmony with these statutes and that they were in force during the years in question. Appellant quotes G. S. 1935, 79-3219b, which reads as follows:

"In case of two or more businesses, whether or not incorporated and whether or not organized in Kansas, owned or controlled directly or indirectly by the same interests the tax commission may distribute or allocate the gross income and deductions between or among such businesses or may require returns on a consolidated basis *if deemed necessary in order to prevent evasion of taxes and to clearly reflect the income."* (Italics inserted.)

Appellant stresses the italicized words in the statute just quoted and argues that before the tax commission can take into consideration a business organized and conducted in another state, even though it be owned or controlled by a taxpayer of this state, it must find that the foreign state unit had been acquired or created by the Kansas taxpayer *for the purpose* of evading its Kansas income tax. It is pointed out that by the stipulated facts these three foreign corporations had been acquired by appellant before our income-tax statute was enacted, and since that time the business of appellant and its relation to the three subsidiaries has been identically the same as it was prior to that time. Hence it is argued it cannot be said that these subsidiaries were acquired and controlled by appellant *for the purpose* of evading income taxes in Kansas. This point lacks merit. Under the statute the tax commission is to consider the income of the business units owned or controlled by a Kansas taxpayer, whether or not incorporated and whether or not organized in Kansas, if it deems such consideration necessary in order to prevent evasion of taxes. The statute does not require a finding that the business units were acquired or controlled *for the purpose* of evading taxes. Irrespective of the reason or the time they were acquired, the fact the taxpayer handles a part of its business through them is to be considered if it is deemed by the tax commission necessary in order to prevent evasion of taxes.

Appellant contends the action of the state tax commission in adding to appellant's apportionable net income the net income of its three subsidiaries violated the income-tax statutes of this state and also violated the due-process clause of the fourteenth amendment of the federal constitution. In the argument it is pointed out that the three subsidiaries are foreign corporations; that none of them made any sales, owned any property, maintained any office, or employed any persons in Kansas during the tax years in question. It is argued that it is apparent on the face of this statement that the income of those corporations should not be taken into consideration in determining appellant's income taxable in this state. This argument overlooks the facts that the subsidiary corporations are wholly owned

by appellant; that their entire business is selling products produced by appellant, and sold by appellant to them at cost of manufacture; that they were acquired by appellant for the purpose of facilitating the sale of its products; that the earnings of the corporations are paid to appellant. Appellant sells some of its products to wholesalers, jobbers and others. For the years in question its sales in that way exceeded the combined sales made by the subsidiaries; hence, selling to the subsidiaries at cost, having them conduct an exclusive selling business and receiving the net profits from those selling activities, was only a part of the plan of appellant in selling its products. Appellant in its brief says:

"Appellant and the commission agree that the major portion of appellant's net income is realized from a unitary salt business, and that the only method of allocating that operating net income between Kansas and the other states is by the employment of an arbitrary allocation formula."

In support of its contention that, considering the net income of its three subsidiaries in determining appellant's net income and determining the portion which should be allocated to this state, the action of the tax commission was not in harmony with our statute, appellant cites *People, ex rel. Studebaker Corp., v. Gilchrist*, 244 N. Y. 114, 155 N. E. 68; *Curtis Companies, Inc., v. Tax Commission*, 214 Wis. 85, 251 N. W. 497; *Com'r of Corp'ns, &c., v. J. G. McCrory Co.*, 280 Mass. 273, 182 N. E. 481, and *Palmolive Co. v. Conway*, 43 F. 2d 226, 56 F. 2d 83; cert. denied, 287 U. S. 601. In the New York case a New York corporation was wholly owned by a foreign corporation. The contract between the parent corporation and its New York subsidiary was so written that the subsidiary could make no profit. In computing the income tax for the New York corporation the tax commission took into consideration the earnings of the non-resident parent corporation. The court held that could not be done under the statute applicable when the assessment was made. (Tax Laws, as amended by Laws 1922, ch. 507.) This statute was amended in 1925 (Laws 1925, ch. 322) so as to read, in part:

"Any corporation liable to report under this article and owned or controlled, either directly or indirectly, by another corporation may be required to make a report consolidated with the owning company. . . ."

*People, ex rel. Federal Motor Truck Co., v. Lynch*, 264 N. Y. 679, 101 N. E. 623 (1934), arose under this amendment. There a New York subsidiary was owned by a Michigan corporation. The state tax commission considered the combined net income in making its

assessment. The taxpayer appealed. The ruling was affirmed. The court of appeals held:

"Franchise taxes properly assessed upon subsidiary of foreign corporation on basis of combined net income and combined segregated assets of parent corporation and its subsidiaries."

In the Wisconsin and Massachusetts cases the business transactions between the parent corporation and its subsidiary were conducted on a basis which made a separate, fair profit to each. Because of this the court held under the particular statute applicable that for the purpose of computing income tax the corporations of the state should be treated separately and not both of them treated as unitary business. We have no such situation here. Appellant makes no profit from the manufactured product sold to its subsidiaries; it sells to them at cost. The result is that it siphons out of this state its own profits for its manufacturing business in this state into its foreign state subsidiaries and collects that profit through the dividends declared to it by such subsidiaries. The two opinions in the Palmolive Company case disclose the formation of numerous corporate entities designed for the purpose of enabling the original corporation to evade income taxes in Wisconsin. So far as these corporations had anything to do with the manufacture, distribution and sale of products the court treated all of them as a unitary business, disregarding corporate forms. Even agreements between the manufacturing company and the selling companies on the cost of manufacture, plus three-percent profit for certain years and plus a six-percent profit for certain other years, was disregarded as inadequate. Among the many corporations formed was one that dealt solely with advertising, and because of the nature of its business it was not included within the group of corporations treated as a unitary business. There is nothing in any of these cases that would require or justify a holding that the tax commission erred in treating appellant and its three foreign state subsidiaries as conducting a unitary business. Neither can the method of computing this tax be said to be in violation of the due-process clause of the fourteenth amendment to the federal constitution. (*Underwood Typewriter Co. v. Chamberlain*, 254 U. S. 113, 65 L. Ed. 165, 41 S. Ct. 45; *Bass, Etc., Ltd., v. Tax Comm.*, 266 U. S. 271, 69 L. Ed. 282, 45 S. Ct. 82; *Hans Rees' Sons v. N. Carolina*, 283 U. S. 123, 75 L. Ed. 879 [and annotation], 51 S. Ct. 385.)

In this connection appellant makes the further contention that the

method of allocation used by the tax commission was improper. We find in the record no real basis for this contention. The tax commission followed our statute. (G. S. 1935, 79-3218.) There is nothing inherently wrong with this method of computing the allocation. (See cases from U. S. Sup. Ct. above cited.) There was no showing by evidence in this case that the method used produced an inequitable result. The trial court found that the tax commission "did not act unreasonably and arbitrarily in its application of the statutory formula in determining the net income of appellant allocable to Kansas for income-tax purposes." We find no reason to disturb this finding.

In making its income-tax returns for the years 1933 and 1934 appellant asked that the costs incident to the maintenance of its Little River, Kan., idle plant should be allocated directly to Kansas income. The tax commission declined to take that view, held that the costs of maintenance of that plant should be treated as a part of the unitary cost of appellant in the conduct of its business, and made a deficiency assessment. This was paid by appellant. In making its income-tax returns for the years 1935 and 1936 it reported the costs of the maintenance of its Little River, Kan., property as a part of the unitary cost of the conduct of its business and paid the tax shown to be due by such return. However, when appellant made its claim for refund, October 2, 1937, and its amended claim for refund, November 27, 1937, these included a claim that for each of the four years the costs of the maintenance of the Little River plant should be allocated directly to its Kansas business, and the amount sought to be recovered and the method by which it was computed were set out in the claim and the amended claim for refund. Since the tax commission has raised no question about it, we pass by the question of the delay of appellant in testing the ruling of the tax commission and go directly to the question of whether its ruling was correct.

Under the stipulated facts appellant is engaged in the unitary business of manufacturing, distributing and selling salt and its allied products in most of the states of the Union. It has salt-producing plants of varied types in many states.

Naturally, which of these is operated, or which one or more of them may be closed down for a time, is a question which would be determined by appellant in its unitary operation. Two of these plants for the production of salt are located in Kansas and are an

integral part of appellant's salt business. The income or expense incurred in connection with such plants constitutes but a part of the income and expenses of appellant's unitary business. G. S. 1935, 79-3218, does not provide specifically for the allocation of this particular type of cost as a nonunitary item. To allocate directly either the income or the expense of such plant, simply because one of them is for a time idle, under a different formula than the remaining income and expenses of the unitary business of appellant would not be consistent with the recognized principle of apportionment. (See *Underwood Typewriter Co. v. Chamberlain*, supra; *Bass, Etc., Ltd., v. Tax Comm.*, supra; *Kent-Coffey Mfg. Co. v. Maxwell*, 291 U. S. 642, 78 L. Ed. 1040, 54 S. Ct. 437, affirming 204 N. C. 365, 168 S. E. 397; *International Elevator Co. v. Thoresen*, 58 N. D. 776, 228 N. W. 192, and *Turco Paint & Varnish Co. v. Kalodner et al.*, 320 Pa. 421, 184 Atl. 37.) With respect to this the trial court found:

"That the order of the Kansas state tax commission appealed from does not operate unreasonably and arbitrarily in apportioning appellant's expense of maintenance of the Little River property as a unitary item allocable to appellant's unitary income wherever produced."

In view of our statute above cited and the stipulated facts, we are unable to find any reason to disturb the finding of the trial court in this respect.

We find no error in the record. The judgment of the court below is affirmed.