CARLISLE B. ROBERTS, Judge.
 

 The plaintiffs appealed from the Department of Revenue’s Order No. I 78-2, dated January 27, 1978. Caterpillar Tractor Co. (hereinafter designated as Caterpillar) was and is engaged primarily in the manufacture of engines and machinery at locations outside the State of Oregon, with sales thereof within the State of Oregon and elsewhere. Towmotor Corporation (hereinafter, Towmotor), during the tax years in question, was a wholly owned subsidiary of Caterpillar and was and is a corporation engaged primarily in the manufacture of engines and machinery at locations both within and without the State of Oregon and the sale thereof both within and without the State of Oregon. There were and are agreements and arrangements between Caterpillar and Towmotor affecting the income of each corporation which is subject to tax pursuant to ORS chapter 317. Plaintiffs acknowledge that Caterpillar and Towmotor were and are engaged in the conduct of a unitary business, as that term is defined in defendant’s regulation and rules during the tax years in question (1969 to 1972, inclusive), and this business is conducted partly within and partly
 
 *[238]
 
 without the State of Oregon, creating questions of allocation of income.
 

 In the tax years 1969 to 1971, inclusive, Caterpillar and Towmotor filed separate Oregon corporation excise tax returns, intending to comply with ORS chapter 317, the Corporation Excise Tax Law of 1929. In 1972, the plaintiffs sought to file a "consolidated return,” seeking to utilize the provisions of ORS 317.360.
 

 The genesis of ORS 317.360 is found in Gen Laws Or 1929, ch 427, § 25. It was recodified in the Oregon Revised Statutes in 1953 and, during the years 1969-1972, read as follows:
 

 "(1) Where a corporation required to make a return under this chapter is affiliated with another or other corporations (whether or not such other corporation or corporations are doing business in Oregon) and the income of the corporation required to make the return is affected or regulated by agreement or arrangement with such affiliated corporation or corporations,
 
 the department may permit or require a consolidated return
 
 and apply the tax upon that part of the income shown on the consolidated return which is properly attributable to this state under the rules and regulations of the department relating to allocation of income.
 
 The corporations which are joined in a consolidated return shall be treated as one taxpayer.
 

 "(2) For the purposes of this section two or more corporations are affiliated if:
 

 "(a) One corporation owns at least 95 percent of the voting stock of the other or others, or
 

 "(b) At least 95 percent of the voting stock of two or more corporations is owned by the same interests.
 

 "(3) If any corporation or corporations which are required to file a consolidated return fail to file such a return, the department may estimate, according to its information and belief, the amount of income which would be shown in a consolidated return and determine the tax due from such estimate.” (Emphasis supplied.)
 
 [1]
 

 
 *[239]
 
 The use of ORS 317.360 (1969 Replacement Part), demanded by the plaintiffs, is controlled solely by the administrative agency. "* * * [T]he department may permit or require a consolidated return * * Even though Caterpillar owns at least 95 percent of the voting stock of Towmotor, the final determination to use a consolidated return for the affiliated corporations was a matter wholly within the department’s discretion. Plaintiffs, in their pleadings and Opening Brief, 23-25, charged that the defendant’s requirement of a combined report in this instance, rather than the consolidated report preferred by the plaintiffs, "represents an abuse of discretion which should be overturned.” A heavy burden is placed on a taxpayer who attacks an administrator’s exercise of statutory discretionary power.
 
 Rogue River Pack. v. Dept. of Rev.,
 
 6 OTR 293 (1976). Data essential to the proof of the plaintiffs’ conclusion were not presented. The court finds that the plaintiffs’ argument is strained and does not carry conviction.
 

 It would appear that the conclusion just stated, relating to defendant’s discretion to "permit or require” consolidated returns, under ORS 317.360, should decide this suit for the defendant. However, out of respect for the plaintiffs’ skillful argument,
 
 [2]
 
 other points will be dealt with in the decision.
 

 It appears to the court that the unitary nature of the activities of Caterpillar and of Towmotor first came to the attention of the auditors of the Department of Revenue when the plaintiffs filed the consolidated return for 1972. The auditors then determined that the consolidated return was unacceptable and that the data in the returns for all the "open”
 
 [3]
 
 
 *[240]
 
 years 1969 to 1971, inclusive, should have been "combined” for reporting purposes in each year, rather than "consolidated.” This action was deemed necessary by the department to meet the provisions of the Uniform Division of Income for Tax Purposes Act, ORS 314.605 to 314.670, adopted by the legislature in 1965 and discussed below.
 

 As stated, the plaintiffs submit that they were engaged in unitary corporate activities during the years in question. They insist on the application of ORS 317.360 because, in their view, it was the only law available to the defendant under which to apportion income of affiliated corporations during the tax years in question. And they rely heavily on the last sentence of ORS 317.360(1):
 

 "* * * The corporations which are joined in a consolidated return
 
 shall be treated as one taxpayer.”
 
 (Emphasis supplied.)
 

 Plaintiffs contend that this provision affords them two tax-saving measures; i.e., the use by Caterpillar of the personal property tax offset described in ORS 317.070 (2) and the nonapplication of the "throwback rule” found in ORS 314.665 (2) (b) (B). These three aspects of plaintiffs’ argument will be considered in turn.
 

 The plaintiffs’ principal argument (that they should be allowed to file consolidated returns, not combined reports, for the tax years 1969 through 1972) is that, prior to the repeal of ORS 317.360 and the enactment of ORS 314.363 in 1975, apportionment of the income derived from the unitary activities of interstate corporations was statutorily "mandated” (PI Op Br 2) when the statutory elements of ORS 317.360’s 95 percent rule are proved to be present (as they were in the present instance). Plaintiffs insist that ORS 317.360 was the only type of "combined report” contemplated by the legislature, the statutes and the regulations in the tax years 1969-1972. Plaintiffs argue that the
 
 statutory
 
 provision for "combined reports”
 
 *[241]
 
 is first found in ORS 314.363, applicable to the tax year 1975 and thereafter.
 

 Upon an examination and consideration of the pertinent statutes, regulations and cases, the court must affirm the defendant’s viewpoint, based on reasoning which follows.
 

 From the vantage point of 50 years’ experience, ORS 317.360 (first enacted in 1929) is a good example of naive draftsmanship, from the standpoint of the experienced tax administrator. The original 1929 version (Gen Laws Or 1929, ch 427, §25) refers to "* * * any taxpayer [which] so conducts its trade or business as either directly or indirectly to distort its true net profits, and the net profits properly attributable to the state, whether by the arbitrary shifting of profit, through price fixing, charges for services or otherwise, * * This clearly manifests a legislative intention to obviate tax avoidance through a manipulation of records or engagement in superficial actions which involve a tax purpose without a business purpose. However, the policing of the allocation of income of a unitary business, conducted both within and without the state, is best done by examining the activities of each contributing unit. In 1929, for this important task, the legislature ingenuously limited the statutory linking or joinder of two or more corporate returns, for purposes of tax auditing, to the situation in which there was a 95 percent control by one corporation of another. Since this limitation set a figure which could readily be changed by the dominant corporation to 94 percent or any other percentage, thus eliminating the state’s power to act (if we accept the plaintiffs’ argument), it turned the provision into a travesty.
 

 In consequence, it appears that ORS 317.360 was neglected and administration of the taxation of interstate corporations was achieved by the use of combined reports, the development of which will be
 
 *[242]
 
 briefly described below.
 
 [4]
 
 The tax administrator, who had discretion to "permit or require” a consolidated return, chose substantially to ignore it.
 

 The concept of the "combined” report for interstate corporations evolved in part through the decision by the U.S. Supreme Court in the landmark case of
 
 Butler Bros. v. McColgan,
 
 17 Cal2d 664, 111 P2d 334,
 
 aff’d
 
 315 US 501, 62 S Ct 701, 86 L Ed 991 (1941), and
 
 Edison California Stores v. McColgan,
 
 30 Cal2d 476, 176 P2d 697,
 
 reaff'd
 
 30 Cal2d 472, 183 P2d 16 (1947).
 

 Butler Bros. v. McColgan, supra,
 
 approved the use of the three-factor formula for apportionment between the appropriate states of the unitary income of a single corporation with many wholly controlled branches. Butler Brothers was an Illinois corporation with its home office in Chicago. It maintained wholesale distributing houses in seven states, including California. A chief issue in the case involved the use of an allocation formula as opposed to separate accounting of taxable income and deductions for each wholesale outlet.
 

 The question of consolidated return versus combined reports was not an issue in
 
 Butler Bros., supra,
 
 but inevitably arose and was treated in
 
 Edison California Stores, supra.
 
 This case involved the tax years 1937 and 1938 of a California corporation, one of 15 subsidiary corporations of a parent Delaware corporation. The subsidiaries were scattered through 15 states and all the goods they sold were centrally purchased and distributed to the subsidiaries by the parent corporation’s business headquarters in St. Louis, Missouri. No interstate sales were made by the state subsidiaries and separate accounting was maintained for
 
 *[243]
 
 each. As in the present case, the plaintiff argued that California tax administrators could not "enlarge” the tax statutes and, therefore, that the tax administrator was bound by § 14 of the California Act, found in 3 Deering’s Gen Laws, Act 8488, which contained a provision for consolidated returns similar to Oregon’s former ORS 317.360 (which the present plaintiffs deem to be controlling in this suit). However, the same Act 8488, in § 10, provided that if the entire business of a corporation was not done within the taxing state, apportionment should be made, based on factors of property, payroll and sales, or the like, to the end that California would fairly allocate the taxable income to each income-producing state, taxing only that income ascribable to California.
 

 The court held that the factual situation was different in principle in
 
 Edison California Stores, supra,
 
 than that enunciated in
 
 Butler Bros. v. McColgan, supra.
 
 The court took note of Act 8488, § 14, which authorized the California commissioner to require consolidated returns, but held that the power to apply the "formula allocation” (involving combined reports)
 

 "* * * in this or in the Butler Brothers case is not derived from the authority to require the filing of consolidated returns, since the latter indicates that the income of the group will be taxed as a unit. The power flows from the authorized method of ascertaining the income attributable to a taxpayer’s activities within the state; and by a parity of reasoning the authority to pursue the method is present whenever activities are partially within and partially without the state (section 10) as in the case of a unitary system * * (176 P2d 697, 702, col 1 (1947).)
 

 In 1964, Oregon followed the rule in
 
 Edison California Stores v. McColgan, supra,
 
 in the case of
 
 Zale-Salem, Inc. v. Tax Com,.,
 
 237 Or 261, 391 P2d 601 (1964). In this instance, the state found that ORS 314.280 could be equated with § 10 of the California Act 8488,
 
 supra.
 
 (ORS 314.280 was enacted by Or Laws 1957, ch 632, § 4, prior to the tax years in
 
 *[244]
 
 question and was a contemporary of ORS 317.360 during those years.)
 

 Furthermore, in the year 1969 (as well as in the year 1972, when the taxpayers first filed a consolidated return), ORS 314.615 was also applicable to the plaintiffs. This provision, a part of the Uniform Division of Income for Tax Purposes Act,
 
 [5]
 
 provides:
 

 "Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in ORS 314.605 to 314.675. Taxpayers engaged in activities as a financial organization or public utility shall report their income as provided in ORS 314.280 and 314.675.”
 

 It is thus seen that the procedure described in ORS 314.615 reflects a policy of the State of Oregon which was followed prior to the adoption of UDITPA and prior to the repeal of ORS 317.360. The genesis is found in ORS 314.280 (1957 Replacement Part), enacted by Or Laws 1957, ch 632, § 4, providing for the allocation of income of corporations doing an interstate business. In Or Laws 1963, ch 319, § 1, this statute was amended to provide for net losses as well as for the taxation of net income. It was again amended in Or Laws 1965, ch 152, § 22, to restrict the original section to financial corporations and public utilities and made use of ORS 314.615, a part of UDITPA, for instructions for corporations generally.
 

 The Supreme Court’s decision in
 
 Zale-Salem, supra,
 
 and in
 
 Coca Cola Co. v. Dept. of Rev.,
 
 271 Or 517, 533 P2d 788 (1975), fully support the defendant’s authority to require the plaintiffs in the present suit to pay taxes on the basis of the combined reports.
 

 
 *[245]
 
 Both counsel have cited the few Oregon cases specifically referring to "consolidated returns” and have argued whether the
 
 Coca Cola
 
 case,
 
 supra,
 
 involved consolidated returns. Under the court’s theory in this decision, stressing the defendant’s discretion to permit or require the consolidated return, the cases offer little aid and, therefore, are not discussed herein.
 

 As the plaintiffs’ arguments indicate, it can be assumed that they would not distinguish between the use of a consolidated return or of the combined report if they could make greater use of the personal property tax offset under ORS 317.070 and avoid the application of the "throwback” rule of ORS 314.665(2) (b) (B) and OAR 150-314.665(2)-A. These two matters will now be considered.
 

 Using a consolidated return and treating Caterpillar and Towmotor as a single entity, pursuant to ORS 317.360, Caterpillar claims it would be able to obtain a valuable tax set-off not otherwise available to it under ORS 317.070. Subsection (1) of this section provides that every mercantile, manufacturing and business corporation doing or authorized to do business within this state shall annually pay an excise tax "according to or measured by its net income.” However, subsection (2) provides that each corporation engaged in this state or elsewhere in the manufacturing, processing or assembling of materials into finished products for purposes of sale (and this includes the plaintiffs) is entitled to an offset of certain personal property taxes in an amount of the taxes "* * *
 
 assessed to it
 
 pursuant to ORS chapter 308
 
 and actually paid by it
 
 upon its properly classified tangible personal property * * *,” or "* * * such taxes in an amount equal to one-third of its excise tax payable under this chapter,
 
 whichever is the lesser.”
 
 (Emphasis supplied.) From its inception, this statute has been strictly construed by the Department of Revenue and its predecessor, the State Tax Commission; i.e., the personal property tax credit is allowed only to the
 
 *[246]
 
 entity owning the property and billed for the personal property tax assessment and which has actually paid the tax. In this instance, Caterpillar met none of these qualifications on account of its Oregon operations but seeks to obtain credit for amounts paid by Towmotor and not usable by it under the statutory restrictions.
 

 This section has caused numerous problems over the years; e.g., problems arising from a change of ownership after assessment or on account of taxes paid by the purchaser, not the party assessed, or questions of legality of ownership of the personal property, and the like. The plain meanings of "assessed to” and "actually paid by it” have been substantially followed over the years.
 
 See
 
 the department’s
 
 Income and Inheritance Tax Law Abstracts,
 
 1979 Cum Ed, ORS 317.070(2), at 1-6. A tax administrator, constantly under pressure from many sources to follow "liberal” interpretations of the law, soon learns that his only protection is a steadfast, almost mechanical, adherence to the common meanings of the words of the statute. During this period, the Oregon legislature has not seen fit to dilute the language and the administrator’s policy has been sustained by the Oregon Supreme Court.
 
 Bumble Bee Seafoods v. Tax Com.,
 
 245 Or 442, 421 P2d 974 (1967).
 

 This court has not been persuaded that some of the Oregon personal property taxes assessed to and paid by Towmotor should be attributed to Caterpillar. Caterpillar and Towmotor are still different entities, although subjected to combined reports. As stated in Keesling, A
 
 Current Look at the Combined Report and Uniformity in Allocation Practices,
 
 42 J of Tax 106, 109 (February 1975):
 

 "2. Because of its importance, it should be emphasized that the combined report is not the same as a consolidated return, and does not in any way result in the taxing of one corporation on or measured by the income of another. Actually the combined report is not a tax return, but constitutes something in the nature of an
 
 *[247]
 
 information return. Notwithstanding its use, each corporation doing business in the taxing state is taxed on or measured by only its own income from sources within the state. However, if the corporation doing business in the state is a member of an affiliated group conducting a business within and without the state, then instead of computing the income attributable to the state on the basis of the corporation’s books of account, which may reflect the operation of only a small segment of the business, the apportionment is made with reference to the income from the entire business just as would be done if the business had been conducted by one entity.”
 

 A part of the UDITPA, popularly known as the "throwback rule,” is found in ORS 314.665, relating to the determination of the "sales factor” in the apportionment of business income of an interstate corporation. It provides that:
 

 "(2) Sales of tangible personal property are in this state if:
 

 "(a) The property is delivered or shipped to a purchaser, other than the United States Government, within this state regardless of the f.o.b. point or other conditions of the sale; or
 

 "(b)
 
 The property is shipped from
 
 an office, store, warehouse, factory, or other place of storage in
 
 this state and
 
 (A) the purchaser is the United States Government or (B)
 
 the taxpayer is not taxable in the state of the purchaser.”
 
 (Emphasis supplied.)
 

 This provision expresses a principle of the uniform act that while no corporation engaged in business in several states should pay taxes on more than 100 percent of its net income, it should pay tax on
 
 all
 
 of such income, even though in some areas in which it does business the sovereign has not sought to exact a tax upon or measured by net income. In such instances, the taxpayer is required to allocate the sale to the state in which the sale arose instead of the state to which the property is delivered.
 

 On first reading, the "throwback rule” suggests that the legislature is overly zealous in seeking to
 
 *[248]
 
 enlarge the revenues. However, administrative experience has produced strong arguments in favor of the rule. Eugene F. Corrigan, Esq., Executive Director, Multistate Tax Commission,
 
 [6]
 
 in
 
 Interstate Corporate Income Taxation—Recent Revolutions and a Modem Response,
 
 29 Vanderbilt L Rev 423, 429-430 (March 1976), has written from the viewpoint of the tax administrator:
 

 "The great amount of litigation that has arisen to date challenging state jurisdiction [in the taxation of interstate income] is a good indication that large corporations would have much to gain if Congress enacted a higher jurisdictional barrier against the states. Higher barriers could produce 'nowhere income’—income that escapes all state taxation. It is the product of a divide- and-conquer strategy that some members of the corporate world have exercised effectively for decades. That strategy was not seriously challenged until the 1970’s when the Multistate Tax Commission, acting on behalf of the states, mounted opposition. Small wonder that the Commission is now under frontal attack by some of the same huge corporations that profited most from that strategy.
 

 "A taxpayer may utilize jurisdictional barriers along with inconsistent attribution methods in several ways to convert taxable income into 'nowhere income.’ [Footnote omitted.] They include:
 

 "(1) attributing income to a state that does not have jurisdiction to tax that income;
 

 "(2) inconsistently attributing sales, property, and payroll in the numerators of the respective factors of the apportionment formula;
 

 "(3) inconsistently differentiating between 'business’ and 'nonbusiness’ income; and
 

 "(4) utilizing a multiple corporate structure to shield unitary business income from taxation.
 

 "The elimination of 'nowhere income’ and the establish- , ment of 'full accountability’ for all of a taxpayer’s income
 
 *[249]
 
 among the states is a major goal of state tax administrators today.” [Footnote omitted.]
 

 This provision of the uniform act was challenged in the State of Illinois. The Illinois Supreme Court approved the inclusion of the "throwback sales” in the sales numerator, even where the states of both the origin and destination of the sales were outside of the State of Illinois and did not fall within the statutory definition of an Illinois sale.
 
 [7]
 
 The court’s reasoning in allowing such inclusion of sales was the clear legislative intent of the Uniform Division of Income for Tax Purposes Act (found also in ORS 314.605-314.670) "to allocate and apportion the business income from the multistate operations of a corporation with those other states having jurisdiction to tax such income in such manner that there is neither overlap nor gap in taxing all of such income derived from the multistate business.”
 
 GTE Automatic Elec., Inc. v. Allphin
 
 [a Director of Revenue of the State of Illinois], 68 Ill2d 326, 369 NE2d 841 (1977).
 

 The plaintiffs in this suit have complained of the state’s denial of statutory tax advantages which, under the facts, were not intended for their use. They have not shown that they have been taxed on extraterritorial values. If a change of the statute is desirable, a legislative solution is more appropriate than a judicial departure from the rule of
 
 stare decisis,
 
 particularly where a uniform law is being construed.
 

 The defendant’s Order No. 178-2, dated January 27, 1978, must be affirmed. The defendant is entitled to its statutory costs.
 

 [1]
 

 This part of the original act was repealed by Or Laws 1975, ch 760, § 3 (at the same time ORS 314.363 was enacted), effective as to corporate income tax years beginning on and after October 1, 1975.
 

 [2]
 

 It must always be borne in mind that: "Anyone may so arrange his affairs that his taxes shall be so low as possible; he is not bound to choose the pattern which will best pay the treasury; there is not even a patriotic duty to increase one’s taxes.” (Statement of the late Hon. Learned Hand, Judge, U. S. Court of Appeals (2d Cir.), an outstanding tax judge.)
 

 [3]
 

 That is, years subject to correction by the defendant within the time limitations set out in ORS 314.410 (1971 Replacement Part). Returns shall be in such form as the Department of Revenue shall prescribe. ORS 314.385.
 

 [4]
 

 More background detail may be found,
 
 inter alia,
 
 in Hellerstein,
 
 State Taxation Under the Commerce Clause: An Historical Perspective,
 
 29 Vanderbilt L J 335-351 (March 1976), and in Keesling,
 
 A Current Look at the Combined Report and Uniformity in Allocation Practices,
 
 42 J of Tax 106-110 (February 1975). And
 
 see
 
 Glaser,
 
 Proposed Solutions to Areas of Conflict in Taxation of Interstate Business,
 
 33 Inst of Fed Tax 983-1004 (1975, Part 1).
 

 [5]
 

 The Uniform Division of Income for Tax Purposes Act (acronym: UDITPA) was adopted by Oregon and enacted by Or Laws 1965, ch 152, and codified as ORS 314.605 to 314.670.
 

 [6]
 

 Oregon is one of the original members of the Multistate Tax Commission.
 
 See
 
 ORS 305.660, enacted in Or Laws 1967, ch 242, § 3.
 
 See also
 
 ORS 305.655 et seq.
 

 [7]
 

 The sales were "direct” or "drop shipment” sales in which orders received by the plaintiff corporation (presumably a foreign corporation with a business domicile in Illinois) were filled directly by plaintiffs
 
 suppliers,
 
 shipping personal property to plaintiffs customers outside of Illinois from an f .o.b. point also outside Illinois, and where plaintiff was not taxable in either the state of origin or of destination.